**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

FLUID DISPOSAL SPECIALTIES, INC.          CIVIL ACTION NO. 24-0577

VERSUS                                                        JUDGE S. MAURICE HICKS, JR.

SEWELL FAMILY OF COMPANIES, INC.      MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court are Cross-Motions for Summary Judgment filed by Plaintiff Fluid

Disposal Specialties, Inc. ("Fluid Disposal") and Defendant Sewell Family of Companies,

Inc. ("Sewell"). See Record Documents 22 & 25. Fluid Disposal seeks summary judgment

finding that there was a valid contract, Sewell breached that contract, and Fluid Disposal

is entitled to damages in the amount of the full contract price. See Record Document 22

("Fluid Disposal's Motion"). Sewell opposed the motion and Fluid Disposal replied. See

Record Documents 28 & 31. Sewell seeks summary judgment finding that there is no

valid contract, it did not breach any purported contract, and, alternatively, that any

damages awarded to Fluid Disposal should be reduced based on Fluid Disposal's failure

to mitigate. See Record Document 25 ("Sewell's Motion"). Sewell opposed the motion.

See Record Document 27. Fluid Disposal did not reply.

For the reasons set forth below, Fluid Disposal's Motion (Record Document 22) is

**GRANTED IN PART** and **DENIED IN PART**. Sewell's Motion (Record Document 25) is

**DENIED**.

**BACKGROUND**

This case involves a contractual dispute over forty-eight vehicles Sewell sold to

Fluid Disposal and a related trade-in program for those vehicles. Sewell is an oil field

service company primarily operated in Louisiana. <u>See</u> Record Document 22-10 at 1. On or around November 16, 2021, Sewell transmitted a three-page packet to Fluid Disposal. The first page of the packet, which appears to be a cover page, reads:

> To whom it may concern,
>
> Thank you very much for the opportunity to present our attached proposal to Fluid Disposal / Hays Companies. The Sewell Family of Companies and Sewell Fleet Management can ensure that your fleet needs are covered.
>
> We pride ourselves on being responsive, flexible, and understand vehicle life cycle, including what the overall cost of ownership **should** be. We believe that we can provide a better, more comprehensive fleet solution given our integration of service lines and understanding of the service area.
>
> Thank you for your time and consideration!

Record Document 21-1 at 1 (emphasis in original). The second page, which appears to be a title page, includes both parties' logos and states that it is a Sewell "proposal for" Fluid Disposal. <u>Id.</u> at 2. The third and final page is entitled "Letter of Understanding" (the "LOU"). It reads:

> **THE FOLLOWING PRICING PARAMETERS WILL ESTABLISH THE MAIN FACTORS TO PRICE SEWELL FLEET PRODUCTS FOR ALL VEHICLES WITH FLUID DISPOSAL.**
>
> **Pricing Structure:**
>
> - Ordered Vehicles – Recommended for best pricing with CPA assistance
> - Life cycle trade-in program for like kind vehicles – max one model year difference
> - Pricing for trade-in difference at 30,000 miles or less – $6000 per vehicle
> - Additional $0.20 per mile over 30,000 miles
> - Additional charges will vary depending on the vehicle condition at time of trade-in
> - Delivery of new vehicle and picking up of trade in will be discounted to $250.00 per transaction

Id. at 3. The bottom of the page has a place for Fluid Disposal to accept the proposal, including placeholders for the name and title of the person accepting the proposal and the date of acceptance. See id. Fluid Disposal's Chief Financial Officer Timothy Brown signed and dated the LOU on behalf of Fluid Disposal. See id.

Fluid Disposal purchased forty-eight trucks from Sewell for $3,235,134.45 (the "Fleet Vehicles"). See Record Document 22-8. In time, fourteen of the Fleet Vehicles accumulated 30,000 miles and Fluid Disposal successfully traded in those fourteen trucks in accordance with the LOU pricing structure. See Record Documents 22-5, 22-3 at 24-25 & 22-10 at 2. On August 17, 2023, Fluid Disposal notified Sewell via email that it sought to trade in nine more Fleet Vehicles that had reached 30,000 miles. See Record Document 22-7 at 1. A Sewell representative responded: "I will get to work." Id. However, Sewell subsequently refused to trade in those nine Fleet Vehicles. See Record Documents 22-10 at 2. To date, only fourteen of the Fleet Vehicles have been successfully traded in by Fluid Disposal.

On April 1, 2024, Fluid Disposal filed a Petition for Damages against Sewell in the 2nd Judicial District Court for the Parish of Claiborne, State of Louisiana, for breach of contract. See Record Document 1-2. According to Fluid Disposal's Petition for Damages, Sewell breached the LOU by refusing to accept the remaining Fleet Vehicles. See id. On May 1, 2024, Sewell removed the case to federal court pursuant to diversity jurisdiction. See Record Document 1. After removal, Sewell answered the Complaint. See Record Document 10. With Sewell's consent, Fluid Disposal later filed an Amended Complaint to include a copy of the LOU and Sewell subsequently filed an Amended Answer. See Record Documents 19, 21 & 36.

In Fluid Disposal's Motion, it argues that the LOU constitutes a binding contract and that Sewell breached the contract by refusing to accept the remaining Fleet Vehicles. See Record Document 22. It argues that it is entitled to damages in the amount of the full $3,235,134.45 contract price. See id.

In Sewell's Motion for Summary Judgment, it argues that the LOU does not constitute a valid contract because it does not include an exact price for each vehicle, meaning the contract was never perfected. See Record Document 25. It alternatively argues that it did not breach the LOU because the reason it refused to accept the remaining Fleet Vehicles was the parties' disagreement about the correct price for each vehicle. See id. Alternatively, it argues that any damages awarded to Fluid Disposal should be reduced based on Fluid Disposal's failure to mitigate, despite the fact that Sewell failed to plead the defense of failure to mitigate in its Answer. See id.

## LAW AND ANALYSIS

### I.    Relevant Law

#### A.  Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart La., L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for

summary judgment bears the burden of demonstrating that there is no genuine dispute of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id.

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex Corp., 477 U.S. at 323). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no genuine issue for trial—and thus, a grant of summary judgment is warranted—when the record as a whole "could not lead a rational trier of fact to find for the non-moving party." Id. "On cross-motions for summary judgment, [the court] review[s] each party's motion independently." Johnson v. Chesapeake Louisiana, L.P., 87 F.4th 305, 308 (5th Cir. 2023).

### B. Contract Interpretation Under Louisiana Law

In a diversity case such as this one, federal courts apply substantive state law. See Moore v. State Farm Fire & Cas. Co., 556 F.3d 264, 269 (5th Cir. 2009); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Therefore, the Court invokes Louisiana contract law and interpretation principles to adjudicate this dispute.[1]

"When a contract can be construed from the four corners of the instrument, interpretation of the contract presents a question of law that can be decided on summary

---

[1] Neither party disputes that Louisiana law governs.

judgment." Springbok Royalty Partners, LLC v. Cook, 54,788, p. 7 (La. App. 2 Cir. 11/16/22), 351 So. 3d 850, 855-56, writ denied, 2022-01832 (La. 2/14/23), 355 So. 3d 614. If the words of the contract are "clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent" and the court can interpret the contract as a matter of law. Apache Deepwater, L.L.C. v. W&T Offshore, Inc., 930 F.3d 647, 656 (5th Cir. 2019) (quoting La. C.C. art. 2046).

However, if there is ambiguity or an absurd result, "the question of intent is an issue of fact." Id. at 657 (citing Gebreyesus v. F.C. Schaffer & Assocs., Inc., 204 F.3d 639, 643 (5th Cir. 2000)). Under Louisiana law, "[w]hether contract language is ambiguous . . . is a question of law." Id. at 656. "Ambiguity as to intent arises when the contract lacks a provision bearing on that issue, its terms are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." Succession of Shaw v. Alexandria Inv. Grp., LLC, 2017-582, p. 4-5 (La. App. 3 Cir. 7/26/17), 248 So. 3d 332, 336 (citing Campbell v. Melton, 01-2578 (La. 5/14/02), 817 So. 2d 69); see also Springbok Royalty Partners, LLC, 351 So. 3d at 856.

## II.    Existence of a Valid Contract

The threshold issue is whether the LOU constitutes a valid, binding contract.[2] Louisiana Civil Code article 2623 provides that "[a] contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it contemplates." This includes

---

[2] Neither party specifically addresses whether the first two pages of the packet Sewell transmitted to Fluid Disposal constitute a part of the purported contract. However, as discussed *infra*, the Court finds that the LOU itself constitutes a valid, binding contract, regardless of whether it considers the first two pages of the packet.

contracts that contemplate sales to occur at some point in the future or upon the happening of a condition. See La. C.C. art. 2623. "The price must be fixed by the parties in a sum either certain or determinable through a method agreed by them. There is no sale unless the parties intended that a price be paid." See La. C.C. art. 2464. The Supreme Court of Louisiana has explained that "parties can consent to buy and to sell a certain thing for a reasonable price." Benglis Sash & Door Co. v. Leonards, 387 So. 2d 1171, 1172-73 (La. 1980). "The essential thing is that there be a meeting of the minds (as opposed to a disagreement) as to price." Id. at 1173.

Whether an agreement existed is a question of fact; whether an agreement is binding is a question of law. Here, the parties do not dispute that the LOU agreement existed nor do the parties dispute the language of the LOU. The parties only disagree as to whether the LOU constitutes a binding contract under Louisiana law. Sewell argues that the LOU does not constitute a valid contract because it includes a pricing structure rather than a set price for trade-ins. See Record Documents 25 & 28. According to Sewell, "a contract to buy or sell anything at a later time or based on the occurrence of a condition, must have a price, not a pricing structure." Record Document 28 at 3 (citing La. C.C. art. 2623). Thus, Sewell argues, the LOU is missing an essential contract term and was never perfected.

By contrast, Fluid Disposal argues that the LOU's pricing structure is sufficient to satisfy the requirements of Louisiana contract law. See Record Document 22. According to Fluid Disposal, under Louisiana contract law, a contract price need only be determinable—it need not be set at a specific number. See Record Document 31 at 5, 9-10 (citing La. C.C. art. 2464). Fluid Disposal argues that the price of the Fleet Vehicles is

7

determinable based on the LOU methodology or pricing structure, and the parties' conduct after execution. See id. The parties' dispute presents the Court with a question of law: whether the contract unambiguously provides for a determinable price, rendering the LOU a valid, binding contract. See Shell Oil Co. v. Tex. Gas Transmission Corp., 176 So. 2d 692 (La. Ct. App. 1964) (finding that "consideration of the enforceability of a contract is a question of law" where the court was required to "determine from the language contained within the four corners of the contract whether it was enforceable and [made] no substantial reference . . . to the intention of the parties, except to say that they intended to have binding prices throughout the entire term of the contract").

The Court begins by examining the language within the four corners of the LOU to determine whether the pricing structure unambiguously allows for a determinable price. A plain reading of the LOU shows the following about the price Sewell was to pay for Fleet Vehicle trade-ins: Sewell would pay $6,000 for each vehicle, minus $0.20 per every mile the vehicle had over 30,000 miles, minus a $250 charge for the delivery of the new vehicle, plus "additional charges, [which] will vary depending on the vehicle condition at time of trade-in." Record Document 21-2 at 3. The pricing structure can essentially be converted to the following formula:  $6,000 - ($0.20 x miles over 30,000) - $250 delivery fee + "additional charges" based on vehicle condition. Id.

The Court finds that the LOU unambiguously includes a determinable price term such that the LOU is a valid and enforceable contract. Most of Sewell's arguments focus on the provision that allows for additional charges based on vehicle condition, positing that because the price can be adjusted based on condition, the price of each Fleet Vehicle is undeterminable. See Record Document 25. But this is not so.

In <u>Brown v. City of Shreveport</u>, 15 So. 2d 234 (La. Ct. App. 1943), the plaintiff signed a contract with the City of Shreveport. The provision at issue regarding the price read: "You are to pay the City two-hundred fifty dollars ($250.00); you are to reclaim the material, sell same and deduct your expenses—the balance to be divided equally between yourself and the City." <u>Id.</u> at 235. The court found that even though "beyond the initial payment of $250 the price was not definitely fixed or determined in the agreement . . . [the] balance was easily susceptible of being absolutely determined." <u>Id.</u> Although the parties could disagree about which expenses should be included or the amounts of those expenses, the existence of that then-unknown variable did not negate the court's finding that the price was ultimately determinable.

Further, in <u>Bibbins & Rice Elecs., Inc. v. Service Machinery & Shipbuilding Corp.</u>, 368 So. 2d 194, 196 (La. Ct. App. 1979), the purported contract at issue included the following provision: "Prices are based on existing tariff, duty and exchange rates and may be varied in accordance with any change in those rates between the date hereon and the shipping date." The court found that despite the provision allowing for increases, the price was determinable and the document was a valid contract. <u>Id.</u> at 195.

Like the agreement at issue in <u>Brown</u>, the contract price here was not fixed or definite, but it is "easily susceptible of being absolutely determined." 15 So. 2d at 235. And like the agreement at issue in <u>Bibbins</u>, the fact that the parties agreed to potential price adjustments based on certain specified circumstances (in <u>Bibbins</u>, rate changes, and here, vehicle condition) does not render the contract price undeterminable. 368 So. 2d at 195. <u>Brown</u> and <u>Bibbins</u> are well-supported by the Louisiana Civil Code, which clearly provides that that a price can be fixed *or* "determinable through a method" agreed

9

upon by the parties. La. C.C. art. 2464. Further, Louisiana case law has also established that parties are permitted to agree to sell something for a "reasonable price." Benglis Sash & Door Co., 387 So. 2d at 1172-73. To find otherwise would be to allow parties to form seemingly binding agreements that are thereafter invalidated if any non-calculated adjustments are allowed, or alternatively, would prohibit flexibility to account for conditions and circumstances that may necessitate a price adjustment.

As explained *supra*, both parties have moved for summary judgment on the issue of whether the LOU constitutes a valid contract. Sewell seeks summary judgment finding the LOU does not constitute a contract. Sewell has shown there is no dispute of material fact as to the language of the LOU but fails to meet its burden of showing that it is entitled to judgment as a matter of law. Sewell's arguments rest entirely on its contentions that the LOU provision allowing for additional charges based on vehicle condition necessarily means that the price of the contract is not determinable. That argument is without merit. Thus, Sewell's Motion for Summary Judgment is **DENIED IN PART** to the extent it seeks a finding that the LOU is not a valid contract.

Fluid Disposal seeks summary judgment finding the LOU does constitute a contract insofar as it asks this Court to find Sewell liable for breach of the LOU. It has shown there is no dispute of material fact as to the language of the LOU and meets its burden of showing that it is entitled to judgment as a matter of law. Because the LOU provides a pricing structure by which the price of the Fleet Vehicles can be readily determined, the contract is valid. Therefore, the burden shifts to Sewell to designate a genuine dispute of material fact. Sewell has not done so.

Sewell claims that the LOU makes the price of each Fleet Vehicle entirely negotiable based on the "additional charges" language. See Record Document 28 at 3. Sewell argues that, because the parties' intent as to this provision was subjective, and what this provision covered was not explicitly included in the LOU, it disputes the "fact" that the price is determinable. It attempts to point to disagreements between the parties as to the trade-in value of several vehicles as a genuine dispute of material fact. See Record Documents 25-1 at 4 & 28-1 at 3-4. However, the issue of whether the contract price is determinable is a question of law, not fact. The Court looks to the four corners of the document to determine as a matter of law whether the contract unambiguously provides for a determinable price. Only if the Court finds that the document is ambiguous does the question transform into one of fact that allows consideration of extrinsic evidence of the parties' intent. Because the uncontested language of the LOU unambiguously provides a method by which the contract price is determinable, the Court cannot turn to extrinsic evidence and finds that the LOU constitutes a valid contract.

Accordingly, Fluid Disposal's Motion for Summary Judgment is **GRANTED IN PART** to the extent it seeks a finding that the LOU constitutes a valid contract.

### III.   Breach of Contract

Having found that the LOU constitutes a valid contract, the Court moves to the parties' arguments as to whether Sewell breached the LOU.

#### A. Fluid Disposal's Motion for Summary Judgment

In its Motion for Summary Judgment, Fluid Disposal argues it is entitled to relief because Sewell breached the LOU. See Record Document 22. Fluid Disposal argues that the contract "provided the terms of [the] vehicle exchange" for all forty-eight Fleet Vehicles

and that Sewell breached the contract by refusing to accept Fleet Vehicles after the first fourteen were exchanged. Id. at 7. In opposition, Sewell argues that it had no obligation to repurchase all forty-eight vehicles and was therefore not in breach. See Record Document 28. Sewell contends that Fluid Disposal admitted that "Sewell was not legally obligated to receive a fixed number of contract vehicles" and has not otherwise proven that it agreed to do so. Id. at 3.[3]

As the party moving for summary judgment, Fluid Disposal holds the initial burden of showing that it is entitled to judgment as a matter of law on the issue of breach and that there is no dispute of material fact. "In Louisiana, a breach-of-contract claim has three 'essential' elements: '(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.'"[4] IberiaBank v. Broussard, 907 F.3d 826, 835 (5th Cir. 2018) (quoting Favrot v. Favrot, 68 So.3d 1099, 1108-09 (La. App. 4 Cir. 2011)).

### i.    Ambiguity of Sewell's Obligation Under the LOU

The Court can only interpret the contract as a matter of law if its words are "clear and explicit and lead to no absurd consequences." See Apache Deepwater, L.L.C., 930 F.3d at 656. As explained supra, a contract is ambiguous where "the contract lacks a

---

[3] Sewell's opposition includes two additional arguments. First, that there was no valid contract because the LOU did not include a determinable price. See Record Document 28 at 3. As explained supra, this argument is without merit. Second, that it did not waive the defense of duty to mitigate because it failed to plead that defense. See id. at 4. This argument is addressed infra.

[4] There is no dispute over the third element of breach. While the parties disagree about Fluid's entitlement to damages and amount of those damages, Sewell does not contend that the alleged breach would not have resulted in any damages.

provision bearing on that issue, its terms are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." Succession of Shaw, 248 So. 3d at 336 (citing Campbell, 817 So. 2d 69). The Court begins by examining the language contained within the four corners of the contract to determine whether Sewell undertook an obligation to perform and the extent of that obligation.

The LOU is quite brief. It is less than one page in substance. See Record Document 21-1 at 3. Almost all of that substance is the pricing structure for the Fleet Vehicles, which is outlined in just one sentence and six bullet points. See id. The LOU is ambiguous because it has no term indicating the extent of Sewell's obligations. The contract does not address how many Fleet Vehicles Sewell is obligated to repurchase, whether there is any time constraint on trade-ins or repurchases, or whether there is any intended duration. See Record Document 21-1. While the LOU provides that there is a "[l]ife cycle trade-in program for like kind vehicles – max one model year difference," it does not specify how the program operates other than providing the pricing structure for trade-ins. Id. at 3. Fluid Disposal points to language at the top of the page, which states that the pricing structure is for "all vehicles with Fluid Disposal." See id. (cleaned up). But this language appears to clarify which trade-ins the pricing structure applies to (all trade-ins)—not how many trade-ins Sewell is obligated to accept. Therefore, this language does not provide any answers as to the bounds of Sewell's obligations.

The Court cannot determine the parties' intent as to the extent of Sewell's obligations within the four corners of the document. Thus, the contract is ambiguous.

ii.    **Interpreting the Extent of Sewell's Obligations Under the LOU**

"[I]f [the] court determines as a matter of law that a contract is ambiguous, then extrinsic (parol) evidence may be used to determine the true intent of the parties, and determining the intent of the parties becomes, in part, a question of fact." Succession of Shaw, 248 So. 3d at 336 (quoting LFI Fort Pierce, Inc. v. Acme Steel Bldgs., Inc., 2016-71, p. 7 (La.App. 3 Cir. 8/17/16), 200 So.3d 939, 946, writ denied, 2016-1684 (La. 11/29/16), 210 So.3d 804); Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C., 965 F.3d 404, 410 (5th Cir. 2020). "It is a generally-accepted principle of the rule of construing ambiguous contract terms against the drafting party that, once the Court has determined that the contract is ambiguous, interpreting the agreement from the words of the contract and extrinsic evidence is a task for the trier of fact." Rainbow USA, Inc. v. Crum & Forster Specialty Ins. Co., 711 F. Supp. 2d 655, 667 (E.D. La. 2010) (citation omitted). Summary judgment based on an ambiguous contract is not appropriate where "the intent of the parties becomes a question of fact" and "there are conflicting affidavits concerning the intent of the parties." LFI Fort Pierce, Inc., 200 So. 3d at 946 (quoting Carter v. BRMAP, 591 So. 2d 1184, 1188-89 (La. App. 1 Cir. 1991)).

Having found the contract ambiguous as to the extent of Sewell's obligations, the Court next turns to whether there is conflicting evidence as to the parties' intent regarding the LOU. See LFI Fort Pierce, Inc., 200 So. 3d at 946. Summary judgment on this issue is only appropriate if there is no genuine dispute of material fact as to the parties' intentions regarding the extent of Sewell's obligations under the LOU.

In its Motion for Summary Judgment, Fluid Disposal argues that there is no dispute of material fact on this issue. It offers several key pieces of evidence to meet its burden.

First and most significantly, it points to Fluid Disposal's Request for Admission Number 7. This request asks Sewell to admit or deny the following: "The Letter of Understanding created an obligation by Sewell to accept all trade-in Contract Vehicles previously sold to FDS." Record Document 22-13 at 2. Sewell's response was: "Admitted." Id. ("Admission Number 7"). In an attachment to its opposition, Sewell claims that this admission was "propounded in error" and that it subsequently provided Fluid Disposal with the correct language. Record Document 28-1 at 3. However, this admission is significant and properly considered by the Court on a Motion for Summary Judgment.

"Federal Rule of Civil Procedure 56(c) specifies that 'admissions on file' can be an appropriate basis for granting summary judgment." In re Carney, 258 F.3d 415, 420 (5th Cir. 2001) (quoting Fed. R. Civ. P. 56(c)[5]). "Since Rule 36 admissions . . . are conclusive as to the matters admitted, they cannot be overcome at the summary judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record." Id.; see also Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1120 (5th Cir. 1991) ("An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible."). This applies both to default and express admissions, "even if the matters admitted relate to material facts that defeat a party's claim." See Am. Auto Ass'n, 930 F.2d at 1120; In re Carney, 258 F.3d at 420 (explaining that this applies to both default and express admissions).

---

[5] This case cites a previous version of the language in Federal Rule of Civil Procedure 56(c). However, the Rule still states that "admissions" are an appropriate basis for granting summary judgment.

"A matter admitted . . . is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). The Fifth Circuit "has stressed that a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)." In re Carney, 258 F.3d at 419 (citing Am. Auto. Ass'n, 930 F.2d at 1120). "[A] district court is not free to amend or withdraw Rule 36 admissions *sua sponte*." Cottrell v. Career Inst. Inc., 1 F.3d 1237, at *1 (5th Cir. 1993) (per curiam); Am. Auto. Ass'n, 930 F.2d at 1120-21 (explicitly rejecting the argument that a court can allow amendment or withdrawal of an admission *sua sponte*).

Here, it is deemed admitted that the LOU created an obligation for Sewell to accept all Fleet Vehicles sold to Fluid Disposal. According to Sewell, it propounded this admission in error in February 2025, approximately three months ago. See Record Document 28-1 at 3. Rule 36 allows for withdraw or amendment of an admission only on motion and Sewell has filed no such motion in the months since this allegedly erroneous admission. Even in its opposition to Fluid Disposal's Motion for Summary Judgment, it mentions the admission only briefly in an attachment. See id. In its attachment addressing Admission Number 7, Sewell failed to provide the Court with the corrected language that was submitted to Fluid Disposal in lieu of Admission Number 7. It also failed to provide the Court with any valid reason that Fluid Disposal should have accepted its corrected language in lieu of Admission Number 7. Most importantly, Sewell has not cited to any authority that would allow it to amend or withdraw this admission without a motion.[6]

---

[6] Even if Sewell had made a motion to amend or withdraw its admission, it would need to show "that withdrawal or amendment: 1) would serve the presentation of the case on its merits, but 2) would not prejudice the party that obtained the admissions in its presentation of the case." In re Carney, 258 F.3d 415, 419 (5th Cir. 2001) (citing Am. Auto Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1119 (5th Cir. 1991)).

Therefore, it is deemed admitted that the LOU "created an obligation by Sewell to accept all trade-in Contract Vehicles previously sold" to Fluid Disposal. Record Document 22-13 at 2. Because Sewell has made no motion to withdraw or amend the admission, and this Court cannot allow it to do so *sua sponte*, this is deemed conclusively established for the Court's consideration of the parties' Cross-Motions for Summary Judgment. This admission is "comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission." Am. Auto. Ass'n, 930 F.2d at 1120 (quoting Advisory Comm.'s Note, 48 F.R.D. 487, 534 (1970)).

Accordingly, based on Sewell's admission, there is no genuine dispute of material fact as to the extent of Sewell's obligation under the LOU. Sewell was obligated to accept all Fleet Vehicles sold to Fluid Disposal in accordance with the terms of the LOU.

To combat this admission, Sewell points to an admission by Fluid Disposal that the LOU "did not obligate Sewell to accept a fixed number of [Fleet Vehicles] from [Fluid Disposal]." Record Document 25-5 at 7. Of course, this admission has the same conclusive effect as Sewell's Admission Number 7. However, it is not directly contrary to Sewell's Admission Number 7. As Fluid Disposal argues in response to Sewell's Motion for Summary Judgment, the LOU applied to vehicles sold to Fluid Disposal—the quantity of which was "at a minimum, the remaining 34 vehicles in the initial 48 truck purchase that [Fluid Disposal] purchased from Sewell." Record Document 27 at 12. The LOU does

---

"Even when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission." Id.

The Court observes that discovery in this case closed on February 27, 2025, several weeks after Sewell propounded Admission Number 7. Trial is currently scheduled for July 21, 2025. See Record Document 15. Sewell has made no motion and offered no reason for its failure to submit a motion to withdraw or amend the admission.

not state how many Fleet Vehicles were ordered or would be ordered nor does it explain whether the LOU would apply to any future purchases or just those included in the initial purchase.[7] Those ambiguities are not before the Court.

Taking both admissions as conclusively proven, Sewell did not have an obligation to accept any fixed number of Fleet Vehicles from Fluid Disposal. See Record Document 25-5 at 7. However, Sewell did have an obligation to accept at least those vehicles that were "previously sold" to Fluid Disposal. Record Document 22-13 at 2. Neither party disputes that forty-eight vehicles were sold to Fluid Disposal before or contemporaneously with the LOU. Accepting that Sewell had an obligation to allow trade-ins for all forty-eight vehicles essentially resolves the parties' dispute over the alleged breach. Neither party disputes that Sewell failed to accept all forty-eight vehicles in accordance with the LOU. If it was obligated to do so, it did breach that obligation.

Accordingly, Fluid Disposal has met its burden of showing that Sewell had a binding obligation to accept the forty-eight Fleet Vehicles purchased in accordance with that contract and that Sewell breached that obligation. Therefore, the burden shifts to Sewell to designate a genuine dispute of material fact to defeat summary judgment. Sewell cannot defeat summary judgment on this issue.

Sewell's response to Fluid Disposal's statement of uncontested facts disputes only six of Fluid Disposal's statements—and it does not further dispute any material facts in its

---

[7] In other words, if one year after the LOU was signed, Fluid Disposal purchased an additional ten vehicles from Sewell, it would be unclear without further agreement whether the LOU applied to those subsequently purchased vehicles.

18

opposition.[8] See Record Documents 28 & 28-1. Sewell's arguments are limited to the non-existence of a valid contract and its lack of obligation to accept Fleet Vehicles. As discussed *supra*, both of those arguments lack merit. Sewell's only relevant argument is that it was not in breach of the purported contract because the parties could not agree on a price. Failure to agree on a price in accordance with the pricing structure of the LOU does not constitute a valid excuse for nonperformance without notice, and Sewell does not argue that it is so. Regardless of whether the parties had a dispute about the price of Fleet Vehicles prior to Sewell's breach, Sewell did in fact breach its obligation by failing to make any attempt to honor the contract. Sewell has failed to meet its burden of designating a dispute of material fact as to breach.

Accordingly, Fluid Disposal's Motion for Summary Judgment is **GRANTED IN PART** to the extent it seeks a judgment that Sewell is liable for breach of contract.

### B. Sewell's Motion for Summary Judgment

Sewell's Motion for Summary Judgment seeks a ruling that Sewell did not breach the LOU. See Record Document 25. Sewell largely argues that there was no valid contract—an argument rejected by this Court *supra*. However, Sewell also briefly argues that it "did not breach any contract to buy back the remaining contract vehicles from Fluid" because "the parties simply could not agree on the trade-in value of the remaining vehicles according to the price listed in the LOU." Record Document 25-1 at 8. In other words, Sewell argues that its refusal to accept the remaining Fleet Vehicles was based

---

[8] Previously, this district's local rules required that parties submit statements of uncontested facts and responses to those uncontested facts with a motion for summary judgment. These filings are no longer required in this district but were submitted by the parties in this case. The Court looks to both these documents and the assertions of fact included in Sewell's opposition.

on the parties' disagreement about the correct price and therefore did not constitute breach. In opposition, Fluid Disposal argues that Sewell "cites no law to support its argument" that Sewell could refuse to honor the contract's pricing structure simply because the contract does not state a specific number of vehicles or because the parties had some disagreement about price. Record Document 27 at 10.

Sewell again fails to meet its summary judgment burden because it fails to show that it is entitled to judgment as a matter of law. This Court will certainly not find that a disagreement between contracting parties leads to automatic dissolution of a contract. There is no dispute of material fact as to the issue of breach, but Sewell has failed to show it is entitled to judgment as a matter of law. Accordingly, Sewell's Motion for Summary Judgment is **DENIED IN PART** to the extent it seeks a judgment that it is not liable for breach of contract.

## IV.    Damages

Finally, both parties have moved for summary judgment on the issue of damages.

### A.  Fluid Disposal's Motion for Summary Judgment

Fluid Disposal has moved for summary judgment, arguing that Sewell's actions dissolved the contract, and it is entitled to the full $3,235,134.45 purchase price, which would place it in the position it was in prior to entering into the contract. See Record Document 22-1 at 8-9. In opposition, Sewell argues only that Fluid Disposal's damages should be reduced based on failure to mitigate. See Record Document 28 at 4. Sewell argues that the duty to mitigate applies even though it did not plead the defense in its Answer. See id.

20

Fluid Disposal argues that to be restored to its position prior to the existence of the contract, it should be awarded the total contract price. However, to award Fluid Disposal the full amount requested would ignore the facts that Fluid Disposal (a) obtained partial performance through the trade-in of fourteen of the Fleet Vehicles and (b) continues to own and possess the remaining thirty-four Fleet Vehicles that it was unable to trade in. Fluid Disposal makes no attempt to account for partial performance and its ownership and possession of the remaining Fleet Vehicles. This failure is unrelated to the parties' dispute regarding failure to mitigate discussed *infra*. The Court is not convinced that Fluid Disposal's position as to the calculation of damages is supported by law nor that its position is an accurate way to calculate the amount necessary to restore Fluid Disposal to its position before entering the contract.

Thus, Fluid Disposal has failed to meet its burden of showing that there is no dispute of material fact regarding the calculation of damages upon dissolution of the contract. Accordingly, Fluid Disposal's Motion for Summary Judgment is **DENIED IN PART** as to the issue of damages.

### B. Sewell's Motion for Summary Judgment

Sewell has moved for summary judgment seeking a finding that Fluid Disposal's damages will be reduced based on its failure to mitigate, despite the fact that Sewell failed to plead this defense in its Answer. See Record Document 25-1 at 9. According to Sewell, Fluid Disposal conceded that it failed to mitigate damages because it refused to sell the Fleet Vehicles to another dealership. See id. at 9-10. In opposition, Fluid Disposal contends that Sewell cannot argue mitigation of damages on summary judgment because

it failed to plead this defense in its Answer. See Record Document 27 at 12-13. Fluid Disposal argues it has not conducted discovery on this defense. See id.

Sewell did not address Fluid Disposal's argument that it cannot raise the affirmative defense of failure to mitigate because Sewell failed to plead this defense in its Answer. Sewell's source for its argument is Louisiana Civil Code article 2002, which sets out in general terms the duty to mitigate. See La. C.C. art. 2002 (explaining that when an oblige fails to "make reasonable efforts to mitigate the damages caused by the obligor's failure to perform . . . the obligor may demand that the damages be accordingly reduced").

The only case Sewell cites to support its argument—which it cites in opposition to Fluid Disposal's Motion for Summary Judgment, not in support of its own motion—is Jones v. Miles, 656 F. 2d 103 (5th Cir. 1981). Sewell cites Jones for the proposition that "neglect to affirmatively plead the defense [of failure to mitigate] is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise." Record Document 28 at 4 (quoting Jones, 656 F.2d at 108 n.7). However, Jones is inapposite, and the passage Sewell cites is taken out of context. The full paragraph from where this quote originates reads in full:

> The defense of estoppel must be set forth affirmatively in pleading to a preceding pleading. Consequently, an affirmative defense that is not asserted in a responsive pleading is generally deemed waived. Even so, in practice an affirmative defense is not waived to the extent that the party who should have pled the defense introduces evidence in support thereof without objection by the adverse party or that the opposing party's own evidence discloses the defense, necessarily indicating his express consent. Neglect to affirmatively plead the defense is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise.

Jones, 656 F.2d at 108 n.7 (citations omitted). In other words, neglect to affirmatively plead a defense is a technicality and does not constitute a waiver *when the defendant*

*introduces evidence at trial in support of the defense without objection from the opposing party*. See id.; see also Jones v. Bravata, 2018-0837 (La. App. 1 Cir. 5/9/19), 280 So. 3d 226 ("[A]t [plaintiff]'s request, the trial court declined to charge the jury regarding mitigation of damages because the defendants did not assert failure to mitigate as an affirmative defense in their pleadings."), writ denied, 2019-01850 (La. 2/26/20), 294 So. 3d 477.

Further, even assuming *arguendo* that the Court found that Sewell had met its burden of showing that Fluid Disposal failed to mitigate its damages, Sewell has offered no evidence as to the actual amounts or implications of that failure to mitigate. Sewell does not suggest any amount by which Fluid Disposal's damages should be reduced. Accordingly, Sewell's Motion for Summary Judgment is **DENIED IN PART** as to the issue of damages. The calculation of damages will remain an issue for trial. Counsel are directed to prepare to discuss damages at the June 18, 2025, pretrial conference scheduled in this matter.

## CONCLUSION

Based on the foregoing analysis, the Court finds there are no genuine issues of material fact regarding the existence of a valid contract and the breach of that contract. Fluid Disposal is entitled to judgment in its favor as a matter of law as to breach of contract. Thus, Sewell's Motion for Summary Judgment (Record Document 25) shall be **DENIED**. Fluid Disposal's Motion for Summary Judgment (Record Document 22) shall be **GRANTED IN PART** as to the issue of liability, that is, that a valid contract exists, and that Sewell is liable for breach of that contract. However, Fluid Disposal's Motion for Summary

Judgment (Record Document 22) shall be **DENIED IN PART** as to the issue of damages.

Calculation of damages remains an issue for trial.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 28th day of May, 2025.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT