# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| FLUID DISPOSAL SPECIALTIES, INC. | CIVIL ACTION NO. 24-0577 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| SEWELL FAMILY OF COMPANIES, INC. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Reconsideration filed by Defendant Sewell Family of Companies, Inc. ("Sewell"). See Record Document 43. In its motion, Sewell requests reconsideration of the Court's May 28, 2025, Memorandum Ruling and Order denying Sewell's Motion for Summary Judgment, and granting in part and denying in part Plaintiff Fluid Disposal Specialties, Inc.'s ("Fluid Disposal") Motion for Summary Judgment. See id. Fluid Disposal opposes the Motion for Reconsideration. See Record Document 55. Sewell did not reply.

For the reasons set forth below, Sewell's Motion (Record Document 43) is **GRANTED**. Upon reconsideration, the Court's conclusions in its May 28, 2025, Memorandum Ruling and Order are undisturbed. Sewell's Motion for Summary Judgment (Record Document 25) shall be **DENIED**. Fluid Disposal's Motion for Summary Judgment (Record Document 22) shall be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The facts underlying this dispute were recounted in the Court's May 28, 2025, Memorandum Ruling and are reproduced here. This case involves a contractual dispute over forty-eight vehicles Sewell sold to Fluid Disposal and a related trade-in program for those vehicles. Sewell is an oil field service company primarily operated in Louisiana. See Record Document 22-10 at 1. On or around November 16, 2021, Sewell transmitted a

three-page packet to Fluid Disposal. The first page of the packet, which appears to be a cover page, reads:

> To whom it may concern,
>
> Thank you very much for the opportunity to present our attached proposal to Fluid Disposal / Hays Companies. The Sewell Family of Companies and Sewell Fleet Management can ensure that your fleet needs are covered.
>
> We pride ourselves on being responsive, flexible, and understand vehicle life cycle, including what the overall cost of ownership **should** be. We believe that we can provide a better, more comprehensive fleet solution given our integration of service lines and understanding of the service area.
>
> Thank you for your time and consideration!

Record Document 21-1 at 1 (emphasis in original). The second page, which appears to be a title page, includes both parties' logos and states that it is a Sewell "proposal for" Fluid Disposal. Id. at 2. The third and final page is entitled "Letter of Understanding" (the "LOU"). It reads:

> **THE FOLLOWING PRICING PARAMETERS WILL ESTABLISH THE MAIN FACTORS TO PRICE SEWELL FLEET PRODUCTS FOR ALL VEHICLES WITH FLUID DISPOSAL.**
>
> **Pricing Structure:**
>
> - Ordered Vehicles – Recommended for best pricing with CPA assistance
> - Life cycle trade-in program for like kind vehicles – max one model year difference
> - Pricing for trade-in difference at 30,000 miles or less – $6000 per vehicle
> - Additional $0.20 per mile over 30,000 miles
> - Additional charges will vary depending on the vehicle condition at time of trade-in
> - Delivery of new vehicle and picking up of trade in will be discounted to $250.00 per transaction

Id. at 3. The bottom of the page has a place for Fluid Disposal to accept the proposal, including placeholders for the name and title of the person accepting the proposal and

the date of acceptance. See id. Fluid Disposal's Chief Financial Officer Timothy Brown signed and dated the LOU on behalf of Fluid Disposal. See id.

Fluid Disposal purchased forty-eight trucks from Sewell for $3,235,134.45 (the "Fleet Vehicles"). See Record Document 22-8. In time, fourteen of the Fleet Vehicles accumulated 30,000 miles and Fluid Disposal successfully traded in those fourteen trucks in accordance with the LOU pricing structure. See Record Documents 22-5, 22-3 at 24-25 & 22-10 at 2. On August 17, 2023, Fluid Disposal notified Sewell via email that it sought to trade in nine more Fleet Vehicles that had reached 30,000 miles. See Record Document 22-7 at 1. A Sewell representative responded: "I will get to work." Id. However, Sewell subsequently refused to trade in those nine Fleet Vehicles. See Record Document 22-10 at 2. To date, only fourteen of the Fleet Vehicles have been successfully traded in by Fluid Disposal.

On May 28, 2025, the Court issued a Memorandum Ruling and Order denying Sewell's Motion for Summary Judgment, and granting in part and denying in part Fluid Disposal's Motion for Summary Judgment. See Record Documents 37 & 38. The Court found that (1) the LOU constituted a valid contract between the parties, (2) the extent of the obligation under the Contract was ambiguous, (3) looking to extrinsic evidence, there was no dispute of material fact that Sewell breached the contract and Fluid Disposal was entitled to judgment as a matter of law on the issue of breach, and (4) a genuine dispute of material fact existed regarding damages. See Record Document 37.

Because the terms of the contract itself were ambiguous, the Court looked to extrinsic evidence of the parties' intent to find that there was no dispute of material fact that Sewell breached its obligation under the contract. Among the evidence the Court considered was what it referred to (and refers to herein) as "Admission Number 7." Id. at

3

15. In the Memorandum Ruling, the Court stated that Fluid Disposal issued a request for admission to Sewell asking it to admit or deny the following: "The Letter of Understanding created an obligation by Sewell to accept all trade-in Contract Vehicles previously sold to FDS." See Record Document 22-13 at 2. Sewell's response was: "Admitted." Id.

After the issuance of the May 28, 2025, Memorandum Ruling, Sewell filed the instant Motion for Reconsideration. See Record Document 43. Sewell points out that Admission Number 7 was requested by Sewell and propounded upon Fluid Disposal. See Record Document 22-13 at 2. Sewell argues that because it made the request, not Fluid Disposal, the admission should not be considered as summary judgment evidence against Sewell. See Record Document 43. Sewell alternatively argues that, if the Court does intend to consider Admission Number 7 as evidence against it, the admission be withdrawn. See id. In opposition, Fluid Disposal argues that Admission Number 7 was properly considered by the Court and that Sewell has not met the standard for showing that the admission can be withdrawn. See Record Document 55.

**LAW AND ANALYSIS**

**I.     Relevant Law**

    **A.  Motion for Reconsideration Standard**

While the Federal Rules of Civil Procedure do not formally recognize the existence of motions for reconsideration, district courts generally consider such motions under Rule 60(b) or Rule 59(e). See Miller Pharmacy Servs., L.L.C. v. AmerisourceBergen Drug Corp., No. 21-CV-0207, 2021 WL 2627452, at *3 (W.D. La. 2021). Because Defendants have moved to reconsider an interlocutory order, the instant motion is controlled by Rule 54(b) of the Federal Rules of Civil Procedure. See id. Under Rule 54(b), any order or decision that adjudicates fewer than all the claims may be revised at any time before the

4

entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. See Fed. R. Civ. P. 54(b).

While the district court enjoys broad discretion in deciding a Rule 54(b) motion to reconsider, and the standard imposed is less exacting, courts largely consider factors that inform the Rule 59 and Rule 60 analysis. See Miller Pharmacy Servs., L.L.C., 2021 WL 2627452, at *2; see also McClung v. Gautreaux, No. 11-CV-0263, 2011 WL 4062387, at *1 (M.D. La. Sept. 13, 2011). Generally, a motion to alter or amend a judgment may be granted based on: "(1) [the need] to correct manifest errors of law or fact upon which judgment is based; (2) the availability of new evidence; (3) the need to prevent manifest injustice; or (4) an intervening change in controlling law." In the Matter of Self, 172 F. Supp. 2d 813, 815-16 (W.D. La. 2001). Pursuant to Rule 54(b), a district court has the power to reconsider an interlocutory order "for cause seen by it to be sufficient." Miller Pharmacy Servs., L.L.C., 2021 WL 2627452, at *2.

However, a motion for reconsideration is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of the order. See Templet v. HydroChem Inc., 367 F. 3d 473, 478-79 (5th Cir. 2004); Williams v. Toyota Motor Eng'g & Mfg., 470 F. App'x 309, 313 (5th Cir. 2012) ("Motions to reconsider 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'"). Nor is a motion for reconsideration a proper vehicle for new legal theories. See Williams, 470 F. App'x at 313. Reconsideration is "an extraordinary remedy that should be used sparingly." Jackson v. Standard Mortg. Corp., No. 18-CV-0927, 2020 WL 133550, at *2 (W.D. La. Jan. 10, 2020). "When there exists no independent reason for reconsideration other than mere disagreement with a prior order,

reconsideration is a waste of judicial time and resources and should not be granted." S. Snow Mfg. Co v. SnoWizard Holdings, Inc., 921 F. Supp. 2d 548, 566 (E.D. La. 2013).

### B. Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." Deshotel v. Wal-Mart La., L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden. See id.

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex Corp., 477 U.S. at 323). In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no genuine issue for trial—and thus, a grant of summary judgment is warranted—when the record as a whole "could not lead a rational trier of fact to find for the non-moving party." Id.

## II.     Analysis

The Court begins by examining the specific relief sought in Sewell's motion. Sewell's motion does not seek reconsideration of this Court's finding that the LOU constitutes a valid contract nor of the Court's finding that the extent of Sewell's obligations under the LOU are ambiguous. See Record Document 37 at 10-11, 13. Because there was a contract and that contract was ambiguous on its face regarding the extent of Sewell's obligations, the Court considered extrinsic evidence to determine whether there was any dispute regarding the parties' intent under the contract.[1] The Court found that based on extrinsic evidence, there was no genuine dispute regarding the parties' intentions under the contract and no genuine dispute of material fact regarding breach. In making that determination, the Court considered Admission Number 7, which it described as an admission made by Sewell. Sewell seeks reconsideration of the Court's May 28, 2025, Memorandum Ruling solely based on the Court's characterization of Admission Number 7 as one made by Sewell and based on the Court considering the admission as summary judgment evidence. See Record Document 43.

In the previous Memorandum Ruling, the Court described Admission Number 7 as an admission made by Sewell in response to a request for admission by Fluid Disposal. See Record Document 37 at 15. In fact, the admission was made by Fluid Disposal in response to Sewell. See Record Document 22-7 at 2. The Motion for Reconsideration is **GRANTED** to correct the Court's characterization of the admission. Therefore, the Court reconsiders its May 28, 2025, Memorandum Ruling to determine whether the Court's

---

[1] See LFI Fort Pierce, Inc. v. Acme Steel Buildings, Inc., 2016-71 (La. App. 3 Cir. 8/17/2016), 200 So. 3d 939, 946, writ denied, 2016-1684 (La. 11/29/16), 210 So. 3d 804.

7

mischaracterization of Admission Number 7 alters the Court's holding on the parties' motions for summary judgment.

### A. Propriety of Court's Consideration of Admission Number 7

The Court first considers whether, accepting that Admission Number 7 was made by Fluid Disposal and not Sewell, the admission is properly considered by the Court in deciding the parties' motions for summary judgment. In its Motion for Reconsideration, Sewell appears to reason that an admission made by the other party cannot be used against it. See Record Document 43. This contention is unpersuasive. Sewell has directed this Court to no case law finding that an admission on file cannot be considered because it was made by the other party in the matter, and this Court's independent review has likewise found no such case.

Regardless of which party made the admission, the admission remains an admission on file. As the Court explained in its May 28, 2025, Memorandum Ruling, "Federal Rule of Civil Procedure 56(c) specifies that 'admissions on file' can be an appropriate basis for granting summary judgment." In re Carney, 258 F.3d 415, 420 (5th Cir. 2001) (quoting Fed. R. Civ. P. 56(c)[2]). "Since Rule 36 admissions . . . are conclusive as to the matters are conclusive as to the matters admitted, they cannot be overcome at the summary judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record." Id.; see also Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1120 (5th Cir. 1991) ("An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district

---

[2] This case cites a previous version of the language in Federal Rule of Civil Procedure 56(c). However, the Rule still states that "admissions" are an appropriate basis for granting summary judgment.

court simply because it finds the evidence presented by the party against whom the admission operates more credible."). This applies both to default and express admissions, "even if the matters admitted relate to material facts that defeat a party's claim." See Am. Auto Ass'n, 930 F.2d at 1120; In re Carney, 258 F.3d at 420 (explaining that this applies to both default and express admissions).

The Court pauses to address two arguments raised in Sewell's Motion for Reconsideration. First, Sewell argues that it was simply asking Fluid Disposal to "admit or deny whether this is their legal position. By asking Fluid [Disposal] to admit or deny a fact, Sewell is not taking a position; it is asking the question." Record Document 43-1 at 3. However, Sewell was well aware of the consequences of an admission at the time it propounded the request for admission. Sewell essentially argues that it can "request an admission, obtain the admission, and then render it meaningless by doing nothing more than saying so, unless it decides it would like to use the admission to its advantage later on." Record Document 55 at 7. Fluid Disposal correctly argues that this approach conflicts with a plain reading of Rule 36, which states that matters admitted are "conclusively established." Id. This Court finds no reason to allow Sewell to rely on admissions helpful to its position yet wholly ignore admissions detrimental to its position.[3]

Second, Sewell argues that the Court should not "constru[e] Fluid [Disposal]'s admission against Sewell" because all facts must be viewed in the light most favorable to the nonmoving party. Record Documents 43 at 1 & 43-1 at 4. This argument fails. The

---

[3] Further, Sewell's contention that it was simply inquiring about Fluid Disposal's legal position contradicts Sewell's simultaneous contention that the request for admission was propounded in error and that Sewell attempted to amend its request the following day. See Record Documents 43-1 at 3 & 28-1 at 3 (". . . Admission No. 7 was propounded in error . . . .").

9

Court is not construing this admission; it is simply applying the same binding weight to Admission Number 7 that applies to every other Rule 36 admission. As explained *supra*, "Rule 36 admissions . . . cannot be overcome at the summary judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record." In re Carney, 258 F.3d at 420. Thus, the Court need not "construe" the admission—it simply accepts those facts and issues that are admitted in evaluating motions for summary judgment.[4]

In sum, Sewell has presented no reason why the Court's consideration of Admission Number 7 was improper. Considering Admission Number 7, the Court would come to the same conclusion as it did in its May 28, 2025, Memorandum Ruling for the same reasons articulated in that Memorandum Ruling: Because the contract is ambiguous, the Court looks to extrinsic evidence of the parties' intent. Looking at that evidence, the Court finds there is no genuine dispute of material fact regarding the parties' intent under the Contract, and there is no dispute of material fact regarding Sewell's breach of its obligation under the Contract. Thus, Fluid Disposal is entitled to summary judgment on the issue of breach.

---

[4] Sewell cites a District of South Carolina case for the proposition that "[a] party may not utilize its own admissions at . . . trial." Record Document 43-1 at 3 (citing In re Air Crash at Charlotte, 982 F. Supp. 1060, 1067 (D.S.C. 1996)). The distinction between the use of admissions at the summary judgment stage and at trial is significant. By considering the admission for the purposes of summary judgment, the Court is not finding or otherwise suggesting that the admission will be admissible at trial. As emphasized *infra*, the Court finds only that there is no genuine dispute of material fact regarding whether Sewell breached the Contract. Thus, the questions of exactly how many Fleet Vehicles Sewell was obligated to accept and the calculation of damages that will result remain for trial.

### B.  Requested Withdrawal of Admission Number 7

Sewell alternatively requests that if Admission Number 7 is considered competent summary judgment evidence against it, Sewell be permitted to withdraw the request for admission. "In order to allow withdrawal of a deemed admission, Rule 36(b) requires that a trial court find that withdrawal or amendment: 1) would serve the presentation of the case on its merits, but 2) would not prejudice the party that obtained the admissions in its presentation of the case." In re Carney, 258 F.3d at 419 (citing Am. Auto Ass'n, 930 F.2d at 1119). "Even when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission." Id.

Sewell argues that withdrawal of the admission would serve the presentation of the case on the merits because it deals with a central issue to the case that the Court found is not addressed in the parties' contract. See Record Document 43-1 at 5. It also argues there is no prejudice. According to Sewell, "Fluid [Disposal] has long been aware of Sewell's position that it did not have any obligation to accept trade-ins, because Sewell's position in this suit has been that no such underlying obligation existed at all." Id. (emphasis removed).

The Court pauses to note that it has still not received the communications wherein Sewell apparently attempted to withdraw its request for admission. The Court's May 28, 2025, Memorandum Ruling noted that Sewell did not provide the Court with any evidence that it attempted to amend or retract Admission Number 7. See Record Document 37 at 16. Sewell has still not provided the Court with any such evidence. Sewell contends that it propounded the request for Admission Number 7 in error. The following day, it attempted to amend or retract the request for admission, but Fluid Disposal argued that its attempt to amend or retract was untimely. See Record Documents 43-1 at 3 & 28-1 at 3. In the

11

instant motion, Sewell states that it attached a copy of its First Amended and Supplemental Request for Admissions to its Motion for Reconsideration. See Record Document 43-1 at 3 n.4. However, that document is not attached to the motion.[5,6]

To the extent that Sewell's motion can be construed as an alternative motion to withdraw Admission Number 7, it is **DENIED**. The Court agrees that Fluid Disposal would not be prejudiced by the withdrawal of the admission except insofar as it would undermine the conclusive effect of admissions for the purpose of summary judgment. However, it would not serve the presentation of the case on its merits. As discussed *infra*, the Court finds that *regardless* of whether it considers Admission Number 7, Fluid Disposal is entitled to summary judgment on the issue of breach. Withdrawal of the admission or request for admission would not alter the Court's conclusion and would thus not affect the presentation of this case on the merits.

### C. Breach of Contract

Even if the Court declines to consider Admission Number 7, Fluid Disposal is entitled to summary judgment on the issue of breach. While the Court did consider Admission Number 7 in its May 28, 2025, Memorandum Ruling, it also reasoned as follows:

> Sewell's response to Fluid Disposal's statement of uncontested facts disputes only six of Fluid Disposal's statements—and it does not further

---

[5] Fluid Disposal's opposition points out that this documentation is not attached to Sewell's motion. See Record Document 55 at 9. Even so, Sewell did not subsequently reply.

[6] Sewell has failed to file any communications or other documentation of its alleged attempt to withdraw the request for Admission Number 7. This documentation should have been attached to Sewell's motion based on its representations therein. And, at minimum, that erroneous omission should have been cured when Fluid Disposal noted its omission. Sewell's failure to file this documentation despite its reliance on its existence approaches legal bad faith, demonstrates a lack of candor, and exposes Sewell's counsel to possible Court-issued sanctions should such behavior continue.

> dispute any material facts in its opposition.[] See Record Documents 28 & 28-1. Sewell's arguments are limited to the non-existence of a valid contract and its lack of obligation to accept Fleet Vehicles. As discussed *supra*, both of those arguments lack merit. Sewell's only relevant argument is that it was not in breach of the purported contract because the parties could not agree on a price. Failure to agree on a price in accordance with the pricing structure of the LOU does not constitute a valid excuse for nonperformance without notice, and Sewell does not argue that it is so. Regardless of whether the parties had a dispute about the price of Fleet Vehicles prior to Sewell's breach, Sewell did in fact breach its obligation by failing to make any attempt to honor the contract. Sewell has failed to meet its burden of designating a dispute of material fact as to breach.

Record Document 37 at 18-19 (footnote omitted).

The Court found in its May 28, 2025, Memorandum Ruling and finds again herein that Fluid Disposal met its initial summary judgment burden of demonstrating that it is entitled to judgment as a matter of law and there is no dispute of material fact. Assuming that the LOU is a binding contract—which this Court has found—Sewell unilaterally stopped complying with its terms. On this, both parties agree. The difference in the parties' factual recitation lies only in the legal significance of those facts. See Petro Harvester Operating Co., L.L.C. v. Keith, 954 F.3d 686, 700 (5th Cir. 2020) ("[W]hile cross-motions for summary judgment do not automatically indicate the absence of genuine issues of material fact, cross-motions may be probative of the non-existence of a factual dispute when, as here, they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." (internal quotation marks omitted)). According to Fluid Disposal, the decision to stop complying with the terms of the LOU constituted breach of contract. According to Sewell, the decision was not a breach because the parties disagreed on the pricing structure and there was no contract—an argument that was rejected by this Court. But again: these arguments are based on the same factual premises.

The burden then shifts to Sewell to designate a genuine dispute of material fact. Even without the benefit of Admission Number 7, Sewell has failed to designate any genuine dispute of material fact regarding breach. Sewell did not identify any genuine dispute of material fact in its opposition to Fluid Disposal's Motion for Summary Judgment and it did not identify any such disputes in its instant Motion for Reconsideration.[7] Accordingly, the Court's summary judgment findings on breach of contract remain undisturbed.

Finally, the Court notes Sewell's argument that "the contention of whether Sewell was required to accept all trade in vehicles is disputed, as Sewell never admitted that it had an obligation to accept all trade-ins." See Record Document 43 at 6. The Court emphasizes that at this stage, the Court's finding is that with or without the consideration of Admission Number 7, Sewell breached the parties' contract. Regardless of whether the contract was ambiguous, there is no dispute that even with that ambiguity, Sewell breached the Contract. However, as stated in the May 28, 2025, Memorandum Ruling and Order, the issue of damages remains for trial. The determination of precisely how many Fleet Vehicles Sewell was obligated to accept is one that bears on the question of damages and will be for the jury to decide.

---

[7] In its Motion for Reconsideration, Sewell argues that it was improper for the Court to consider Admission Number 7, but it does *not* argue that without that admission there remains any genuine dispute of material fact. And even if Sewell had raised a genuine dispute of material fact for the first time in its Motion for Reconsideration, the Court would not have considered that argument. See Templet v. HydroChem Inc., 367 F. 3d 473, 478-79 (5th Cir. 2004) (explaining that a motion for reconsideration is not the proper vehicle for raising new arguments that could have been raised before the entry of the order).

In sum, the Court finds that regardless of whether it considers Admission Number 7, there is no genuine dispute of material fact regarding breach of contract and that Fluid Disposal is entitled to judgment in its favor as a matter of law on the issue of breach.

## CONCLUSION

Based on the foregoing analysis, Sewell's Motion for Reconsideration (Record Document 43) is **GRANTED** only to the extent it seeks a correction regarding the Court's mischaracterization of Admission Number 7 in its previous ruling.

Upon reconsideration, the Court finds there are no genuine issues of material fact regarding the breach of contract and Fluid Disposal is entitled to judgment in its favor as a matter of law as to breach of contract. Thus, the Court's ultimate rulings in its May 28, 2025 Memorandum Order and Ruling remain undisturbed. Sewell's Motion for Summary Judgment (Record Document 25) shall be **DENIED**. Fluid Disposal's Motion for Summary Judgment (Record Document 22) shall be **GRANTED IN PART** as to the issue of liability, that is, a valid contract exists, and Sewell is liable for breach of that contract. However, Fluid Disposal's Motion for Summary Judgment (Record Document 22) shall be **DENIED IN PART** as to the issue of damages. Calculation of damages remains an issue for trial.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of August, 2025.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT